# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 99-20006
Summary Calendar

RICHARD J. HAUSNER, MD, TRUSTEE; TERRY A
HAUSNER, TRUSTEE; RICHARD J. HAUSNER, MDPA,

Plaintiffs-Appellees,

versus

PBA RETIREMENT PLANS CO, ET AL.,

Defendants,

PBA RETIREMENT PLANS CO.,

Defendant-Appellant.

Appeal from the United States District Court
for the Southern District of Texas
(H-97-CV-675)

January 6, 2000

Before HIGGINBOTHAM, DeMOSS, and STEWART, Circuit Judges

PER CURIAM:[*]

Defendant, PBA Retirement Plans Co. ("PBA"), appeals the district court's final judgment

which awarded the plaintiffs $421,000 plus prejudgment and postjudgment interest for breach of

implied warranty.[1]  For the following reasons we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Richard J. Hausner, M.D., P.A, is a medical practice.  This medical practice had a retirement

plan for which Richard J. Hausner, M.D. and his wife, Terry Hausner ("Hausner" or "plaintiffs") were

_____

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1] The final judgment also awarded plaintiffs $30,000 in attorneys' fees.  However, that issue is not briefed by PBA therefore we will not address that award.

the plan's trustees. Prior to 1987, the Hausners had two retirement plans which were administered by Sydney Fairchild Company. The plans provided income tax deferral and were limited in the amount which could be contributed to the plan. In 1986, Hausner was informed by Sydney Fairchild Company that the plans were overfunded by $300,000. In an attempt to solve the overfunding problem, Hausner decided to switch plan administrators. PBA became the new retirement plan administrator and informed Hausner that merging the two funds would eliminate the overfunding. Based on this advice Hausner merged the two funds. However, in 1994 PBA discovered that one of its vice-presidents had miscalculated the contributions which Hausner could make to the plan. At that time, PBA informed Hausner that the plan was overfunded. After getting a second opinion, Hausner sought to enter into a settlement with the Internal Revenue Service before the overfunding was discovered. In 1996, Hausner agreed to pay the I.R.S. $421,000 for settlement of this matter. In November 1996, Hausner filed this action against PBA, and other defendants who were employees of PBA and another company that PBA consulted in its efforts to give advice to Hausner. Hausner claimed that PBA had contracted to provide retirement plan administration, and that PBA had breached the implied warranty to render these services in a good and workmanlike manner. Hausner also alleged negligence, constructive fraud, and violation of the Texas Deceptive Trade Practices Act ("DTPA"). The district court dismissed the negligence, constructive fraud, and DTPA claims on summary judgment as barred by the two-year statute of limitations which governs DTPA and tort claims.[2] After a bench trial on the breach of implied warranty claim, the district court found for Hausner and entered final judgment in the amount of $421,000 with prejudgment interest of 10% per annum, and postjudgment interest of 4.616% per annum. The district court also ordered PBA to pay Hausner's $30,000 in attorneys' fees. PBA appeals the district court's award of $421,000.

DISCUSSION

---

[2] The district court found that the constructive fraud claim should be governed by the two-year statute of limitations for torts because the factual allegation of the fraud claim sounded in tort and not fraud.

2

The district court entered a conclusion of law that PBA had breached its implied warranty that services be rendered in a good and workmanlike manner. Conclusions of law are reviewed *de novo*, applying the same standard as the district court. See Ivy v. Jones, 192 F.3d 514, 516 (5ᵗʰ Cir. 1999).

I.      Breach of Implied Warranty

PBA argues that Texas does not recognize a cause of action for breach of implied warranty to render accounting services in a good and workmanlike manner. PBA further contends that this breach of implied warranty claim was not based on any proven contract, and that Hausner's claim of breach of implied warranty thus sounds in tort as a malpractice claim instead of a contract claim. Tort claims are subject to a two year statute of limitations, and thus Hausner's claims should be time-barred

PBA is correct that Texas does not recognize a breach of implied warranty for the rendering of accounting services. In Murphy v. Campbell, 964 S.W.2d 265, 268 the Supreme Court of Texas held that Texas law does not recognize a breach of implied warranty for professional services, and that there is no need for an additional remedy for accounting malpractice because a plaintiff may obtain full relief in an action for negligence. See also, Hendricks v. Thornton, 973 S.W.2d 348, 371 (Tex. App.-- Beaumont 1998, petitioner. denied).

This court has also recognized that claims for breach of implied warranty under a contract to perform professional services are tantamount to claims for professional malpractice and thus should be recognized as tort claims. PBA argues that the present case is identical to the circumstances in Askanse v. Fatjo, 130 F.3d 657 (5ᵗʰ Cir. 1997). In Askanse, Ernst & Young, an accounting firm, who performed an audit were alleged to have conducted a negligent audit. We concluded that Texas does not recognize a breach of contract claim based on accounting malpractice, and thus these claims against Ernst & Young should be dismissed. See Askanse, 130 F.3d at 676. See also FDIC v. Ernst & Young, 967 F.2d 166, 172 (5ᵗʰ Cir. 1992) (noting that under Texas law failure to use professional care is a tort claim).

3

Although PBA earnestly cites numerous Texas and federal cases for the proposition that breach of contract claims against professionals sound only in tort, unfortunately none of these cases are applicable to the present case. There is no indication that PBA are accountants or professionals of the type discussed in all of the above cases. In all of the cases cited by PBA for the proposition that there is no recognized claim for breach of implied warranty in rendering accounting services the defendants were accounting firms who offered the services of Certified Public Accountants to complete auditing, tax advice, and general accounting. See Hendricks, 973 S.W. 2d at 352-53 (describing defendant as an accounting firm handling auditing, taxes, and general accounting for a securities corporation); Murphy, 964 S.W.2d at 267 (defendant an accounting and auditing firm). PBA does not allege that they are an accounting firm. PBA is instead a pension plan administration firm. At trial PBA itself acknowledged that it does not employ any actuaries, tax lawyers, or CPAs. Therefore, while PBA gave tax advice and kept records regarding the funding of the Hausner retirement plan, PBA is a self described third party administrator that provides clerical and administrative support. PBA is not an accounting firm or provider of professional accounting services. Therefore, case law which governs the functions of accounting firms and those businesses providing professional accounting services is not applicable to the present case.

Hausner's pleadings and the district court's decision were instead based on PBA's contract with Hausner to provide retirement plan administrative services. It is well established under Texas law that accompanying every contract is a common-law duty to perform with care, skill, reasonable expedience, and faithfulness. Ambassador Development Corporation v. Valdez, 791 S.W.2d 612, 620 (Tex. App.-- Forth Worth 1990, no writ) (citing Aranda v. Insurance Co. of North America, 748 S.W. 2d. 210, 212 (Tex. 1988)).[3]

PBA does not contend that there is no cause of action for breach of implied warranty under contract principles, instead PBA argues that Hausner's claims sound in tort law , not contract law and

---

[3] Although Aranda is specifically related to insurance contracts, the court states that it is applying the more general principle of duty and care under common-law contracts to the specific area of insurance contracts. See Aranda, 748 S.W.2d at 212.

4

are therefore subject to a two-year statute of limitations. Application of a two-year statute of limitations would result in Hausner's claims being time-barred. Specifically, PBA contends that Hausner produced no written contract, or made any specific references to an oral contract. However, PBA never challenged the existence of a contract in the district court. In fact, in its answer to PBA's original complaint PBA specifically admitted that it "contract[ed] to assist with the administration of the two plans."[4] Existence of a contract and the details of its provisions are factual matters which may not be challenged for the first time on appeal. See Fairchild Aircraft Corporation v. Butler Aviation International Inc., 6 F.3d 1119, 1128 (5th Cir. 1993) (stating that to preserve an argument for appeal at the trial court level that argument must be pressed, and not merely intimated in a manner which allows the trial court to rule on it).[5] Thus, this undisputed existence of a contract necessitates our conclusion that Hausner's breach of implied warranty claim sounds in contract and not in tort. The statute of limitations for causes of action based in contract is four years. TEX. CIV. PRAC. & REM. CODE § 16.004(3). On appeal, it is acknowledged that Hausner had knowledge of the plan's overfunding in June 1994, and this action was filed in November 1996. Thus, Hausner is well within the four-year statute of limitations for causes of action based in contract law.

II.    Offset Due to Additional Earnings

In the alternative, PBA argues that the district court erred in calculating the amount of damages incurred by Hausner. The district court entered a finding of fact that Hausner sustained damages in the amount of $421,000. This amount was solely based on the Hausner's payment to the IRS to settle any tax liability the plan incurred due to the overfunding. Findings of fact are reviewed for clear error. See Ivy, 192 F.3d at 516.

---

[4] PBA did argue in the district court that the breach of implied warranty claim sounded in tort as a malpractice or negligence claim. However, PBA never challenged the existence of the contract.

[5] Hausner also contends that PBA failed to raise its argument concerning Hausner's breach of implied warranty claim. While PBA did not specifically claim that the breach of contract claims against accounting firms were only recognized as professional malpractice, PBA did make the general argument that Hausner's breach of implied warranty sounded only in tort.

PBA argues that although the plan was overfunded, the contributions to the fund were invested well and continued to earn profits. The overfunded amount, approximately $361,000 actually earned $500,000. The district court found, however, that this investment was irrelevant because the $421,000 was paid by the P.A. and not the plan itself. Therefore, any benefits to the plan would not offset the damages incurred to the practice from the IRS settlement. After a thorough review of the record it is clear that the district court considered all of the pertinent evidence relevant to assessing damages, and we found no evidence to suggest that the district court's findings were clearly erroneous.

## CONCLUSION

The district court correctly found that Hausner's breach of implied warranty claim sounded in contract, and thus was governed by a four year statute of limitations. The district court also correctly assessed the amount of damages and determined that PBA should be responsible for $421,000 in damages with prejudgment and postjudgment interest.

AFFIRMED.