207 F.3d 139 (2nd Cir. 2000)
 REGINA A. SCHAEFER, Plaintiff-Appellee,
v.
THE STATE INSURANCE FUND, Defendant-Appellant,
MARTIN A. FISCHER, ESQ., as Chairman of the Board of Directors of the State Insurance Fund, CECELIA E. NORAT, as Executive Director of the State Insurance Fund, RAYMOND C. GREEN, as Attorney
General of the State Insurance Fund, THE STATE OF NEW YORK, and ALBERT K. DIMEGLIO, individually and officially, Defendants.
 Docket No. 99-7619
August Term 1999
 UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT
 Argued December 6, 1999
Decided: March 22, 2000
 
 Appeal from a judgment in the United States District Court for the Southern District of New York (Keenan, J.), finding for plaintiff after trial and awarding damages under the Americans With Disabilities Act, 42 U.S.C. 12101 et seq.
 VACATED and REMANDED.
 EILEEN H. PERSKY, Esq., Oceanside, N.Y., for Plaintiff-Appellee.
 MARK GIMPEL, Esq., Deputy Solicitor General of the State of New York (Robert A. Forte and Edward Johnson, Assistant Attorneys General, and Eliot Spitzer, Attorney General, on the brief), New York, N.Y., for Defendant-Appellant.
 Bill Lann Lee, Acting Assistant Attorney General, and Jessica Dunsay Silver and Timothy J. Moran, Attorneys, U.S. Department of Justice, Washington, D.C., for amicus curiae United States.
 Before: WALKER, CABRANES, and PARKER, Circuit Judges.
 PER CURIAM:
 
 
 1
 Plaintiff-appellee Regina Schaefer was diagnosed with diabetes in March of 1991. She has a type of diabetes called "insulin-independent," meaning that it can be treated without insulin injections using instead dietary restrictions and oral medication that does not contain insulin.[1]
 
 
 2
 In April of 1991, Schaefer was dismissed from her job as an office clerk at the New York Office of General Services, where she had worked since 1973. She applied for and obtained a probationary position as a file clerk with defendant New York State Insurance Fund. Plaintiff notified her new employers of her diabetic condition. During her 26-week probationary period, plaintiff received two quarterly written reports that graded her work "unsatisfactory" in several areas. She also received negative verbal feedback from her immediate supervisor, Linda Van Dross. Plaintiff was also told that her accumulated sick leave, much of which she had been using to visit doctors or for other legitimate reasons, had been depleted to a level below office targets. When it became clear that plaintiff would not obtain a permanent position after her probationary period in Van Dross's unit, she requested and obtained another probationary period of equal length in supervisor Pat Quinones's unit. During this period too, plaintiff received two largely unsatisfactory written reports and several verbal warnings. Plaintiff testified that during both probationary periods her work was satisfactory and that her evaluations were inaccurate and unfair. On March 11, 1992 she was terminated.
 
 
 3
 Schaefer filed this action in January of 1995, alleging inter alia that defendants had discriminated against her in violation of the Americans With Disabilities Act of 1990 ("the ADA"), 42 U.S.C. 12101 et seq. She alleged generally that she was disabled within the meaning of the statute and specifically that she was "perceived by her supervisors and co-workers as suffering from a disability."[2]
 
 
 4
 On March 19, 1998, the district court denied defendants' motion for summary judgment. The court framed the legal question as whether ameliorative measures should be taken into account in determining whether a diabetic is "disabled" under the ADA. It predicated its inquiry on the observation that there is "no question that plaintiff's condition when uncontrolled by medication does limit major life activities, but when controlled it does not." Following the majority of circuits, and noting that the Second Circuit had not yet ruled on the question, the district court held that ameliorative measures should not be taken into account when determining whether an impairment substantially limits a major life activity. See Arnold v. United Parcel Serv., Inc., 136 F.3d 854, 863 (1st Cir. 1998); Matczak v. Frankford Candy & Chocolate Co., 136 F.3d 933, 937 (3rd Cir. 1997); Doane v. City of Omaha, 115 F.3d 624, 627-28 (8th Cir. 1997); Harris v. H & W Contracting Co., 102 F.3d 516, 522 (11th Cir. 1996); Holihan v. Lucky Stores, Inc., 87 F.3d 362, 366 (9th Cir. 1996); Roth v. Lutheran Gen. Hosp., 57 F.3d 1446, 1454 (7th Cir. 1995). But see Sutton v. United Air Lines, Inc., 130 F.3d 893, 902 (10th Cir. 1997) ("The determination of whether an individual's impairment substantially limits a major life activity should take into consideration mitigating or corrective measures utilized by the individual."); Gilday v. Mecosta County, 124 F.3d 760, 766-67 (6th Cir. 1997). The court concluded that plaintiff was disabled under the ADA because her condition substantially limited a major life activity.
 
 
 5
 The case proceeded to trial. The district court instructed the jury, after setting out the three definitions of disability in the ADA, that "the plaintiff has a disability within the meaning of the statute and that she is otherwise qualified for the position." The jury found for plaintiff and awarded damages. Defendants appealed.
 
 
 6
 The Supreme Court subsequently handed down decisions holding that ameliorative measures should be considered when courts decide whether a plaintiff is substantially limited in a major life activity. See Sutton v. United Air Lines, Inc., 119 S. Ct. 2139, 2146 (1999); Murphy v. United Parcel Serv., Inc., 119 S. Ct. 2133, 2137 (1999); Albertsons, Inc. v. Kirkingburg, 119 S. Ct. 2162, 2168-69 (1999). Defendants now argue that these decisions require reversal because plaintiff is not limited in any major life activity when ameliorative measures are considered. Plaintiff counters that the jury verdict should be upheld but, if it is not and the case is remanded, she should be permitted to show that she is disabled under the ADA, even considering ameliorative measures, because her diabetes is an impairment that substantially limits a major life activity, she has a record of such an impairment, and she is regarded as having such an impairment.
 
 
 7
 Although normally "where summary judgment is denied and the movant subsequently loses after a full trial on the merits, the denial of summary judgment may not be appealed," this rule does not apply where the district court's error was purely one of law. McPherson v. Kelsey, 125 F.3d 989, 995 (6th Cir. 1997) (internal quotation marks omitted), cert. denied, 523 U.S. 1050 (1998). We review the district court's denial of summary judgment de novo. See Cellular Tel. Co. v. Town of Oyster Bay, 166 F.3d 490, 492 (2d Cir. 1999).
 
 
 8
 In order to make out a prima facie case under the ADA, the plaintiff must prove, inter alia, discrimination by a preponderance of the evidence. See Heyman v. Queens Village Comm. for Mental Health for Jamaica Community Adolescent Program, Inc., 198 F.3d 68, 72 (2d Cir. 1999). As one element of the prima facie case--the element at issue in this appeal--plaintiff must show that she has a "disability" within the meaning of the ADA. A disability can be shown following one of three definitions:
 
 
 9
 The term "disability" means, with respect to an individual--
 
 
 10
 (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;
 
 
 11
 (B) a record of such an impairment; or
 
 
 12
 (C) being regarded as having such an impairment.
 
 
 13
 42 U.S.C. 12102(2); see also Colwell v. Suffolk County Police Dep't, 158 F.3d 635, 641 (2d Cir. 1998). No one disputes that diabetes is an impairment; the question before the district court was whether plaintiff's diabetes could be considered a disability under one of the three statutory definitions.
 
 
 14
 The district court's denial of defendants' motion for summary judgment rested on legal reasoning that has turned out to be incorrect. The district court quite reasonably followed the rule of a vast majority of circuit courts at the time, see cases cited supra, and subsequently of this court, see Bartlett v. New York State Bd. of Law Exam'rs, 156 F.3d 321, 329 (2d Cir. 1998), vacated and remanded, 119 S. Ct. 2388 (1999), and ruled that whether a plaintiff is "disabled" under the ADA's first definition should be determined without reference to available treatment. But while the appeal was pending in this court, the Supreme Court ruled that whether a plaintiff is substantially limited in a major life activity should be determined by considering the impact of the impairment as ameliorated by measures such as eyeglasses or medication. See Sutton, 119 S. Ct. at 2149 (eyeglasses); Murphy, 119 S. Ct. at 2137 (medication). Whether a given impairment constitutes a disability once ameliorative measures are considered is an individualized, fact-specific inquiry. See Sutton, 119 S. Ct. at 2147 (using the example of diabetes).
 
 
 15
 Faced with a similar situation--a pre-Sutton district court ruling of disability that did not consider ameliorative measures--other courts of appeals have vacated and remanded where a factual question remained whether plaintiff was disabled even when treatment was taken into account. See Ivy v. Jones, 192 F.3d 514, 516 (5th Cir. 1999); Higgins v. New Balance Athletic Shoe, Inc., 194 F.3d 252, 265 (1st Cir. 1999); McAlindin v. County of San Diego, 192 F.3d 1226, 1236 (9th Cir. 1999); Taylor v. Phoenixville Sch. Dist., 184 F.3d 296, 302 (3d Cir. 1999).
 
 
 16
 At the time plaintiff filed her papers in opposition to defendants' motion for summary judgment, on May 1, 1997, no court of appeals had ruled that corrective measures should be taken into account when determining whether an individual is substantially limited in a major life activity. The Sixth and Tenth Circuits would not so rule until later that year. See Sutton, 130 F.3d 893 (filed Nov. 26, 1997); Gilday, 124 F.3d at 760 (filed Sept. 2, 1997).[3] Understandably, plaintiff thus focused her energies on the statute's first definition and assumed correctly that the district court would find in her favor on that issue. She also correctly predicted this court's 1998 ruling in Bartlett. See Bartlett, 156 F.3d at 329. She should not now be faulted for a lack of perfect prescience. Reasonably relying on the law as it stood at the time and on the district court's summary judgment ruling, Schaefer did not present expert testimony that she was substantially limited in a major life activity when aided by medication and dietary restrictions. At oral argument before us, she expressed her intention to present such evidence on remand. In these circumstances, we think she should be given the opportunity to do so.
 
 
 17
 Defendants object that the judgment should be reversed on the strength of the district court's statement that "[t]here is no question that plaintiff's condition when uncontrolled by medication does limit major life activities, but when controlled it does not." But because the district court ruled that plaintiff was disabled without regard to ameliorative measures, the second part of its statement--that plaintiff's condition when treated did not limit any major life activity--was unnecessary to its holding and is dictum. Moreover, it was made without regard to evidence to the contrary that plaintiff, in the reasonable belief that it was superfluous, declined to offer but promises on remand.
 
 
 18
 Plaintiff also did not present evidence in the district court that she was disabled under the second or third statutory definitions, again reasonably predicting that she would prevail under the first. On remand, she has expressed an intention to show both that she was regarded as having an impairment and that she had a record of impairment. She should be permitted to do so.
 
 
 19
 The judgment below is vacated and remanded for further proceedings consistent with this opinion.
 
 
 
 Notes:
 
 
 [1]
 Her condition is also referred to as "Type II" diabetes.
 
 
 [2]
 According to the ADA,
 The term "disability" means, with respect to an individual
 (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;
 (B) a record of such an impairment; or
 (C) being regarded as having such an impairment.
 42 U.S.C. 12102(2).
 
 
 [3]
 Moreover, the Supreme Court would not grant certiorari in Sutton, Murphy, and Albertsons until January 8, 1999. See Sutton v. United Airlines, Inc., 119 S. Ct. 790 (1999); Murphy v. United Parcel Serv., Inc., 119 S. Ct. 790 (1999); Albertsons, Inc. v. Kirkingburg, 119 S. Ct. 791 (1999).