United States Court of Appeals
Fifth Circuit

**F I L E D**

**May 14, 2003**

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS**

**For the Fifth Circuit**

No. 02-50869
Summary Calendar

KARL A. WHITE,

Plaintiff-Appellant,

VERSUS

AMERICAN HABILITATION SERVICES, INC.,

Defendant-Appellee.

Appeals from the United States District Court
For the Western District of Texas

(A-01CA-377-SS)

Before JONES, STEWART, and DENNIS, Circuit Judges.

DENNIS, Circuit Judge:[*]

In this employment discrimination action, Kevin White pro se
alleges that his former employer, American Habilitation Services,
Inc. ("AHS"), demoted and eventually discharged him in violation of

_____

   [*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this
opinion should not be published and is not precedent except under
the limited circumstances set forth in 5TH CIR. R. 47.5.4.

1

Title VII and the Americans with Disabilities Act of 1990 ("ADA").[1]
The district court granted summary judgment for AHS. White now appeals. We AFFIRM.

I.

Because White provides no recitation of facts in his brief, we accept and adopt the district court's presentation of the relevant facts:

> AHS provides daily living assistance in group homes for individuals with mental and physical disabilities. White began working at AHS on July 21, 2000 as a Residential Manager. He was hired by Rich Franks, the Residential Director of AHS's group homes in Austin. White is an African-American male and is hearing-impaired such that he can only hear loud noises. White's responsibilities as Residential Manager included supervising direct care staff, staffing the group homes, and being on call. During his employment with AHS, he also worked at the Texas School for the Deaf ("TSD") as central plant monitor. AHS has a policy that outside employment must not compete with an employee's job performance.
>
> On September 8, 2000, while White was on call, Franks paged him and asked him to assist with a staff shortage at one of the group homes. At the time, White was at his TSD job and refused to leave to cover the shortage, even though Franks explained to him he needed to choose his primary employer. On September 13, 2000, White was suspended pending termination. In lieu of termination, AHS offered him a direct care position at the Kenyon House, one of the group homes. White was informed if he did not appear at the job on September 28, the job offer would be considered rejected and his employment would be terminated. He did not appear on that date and was terminated. AHS filled the Residential Manager position with an African-American female who had worked for the company since July 2, 1999.

In addition to these facts, the record shows that White presented

---

[1] 42 U.S.C. §§ 12101 et seq.

AHS with a list of his conditions for taking the direct care position. Only one of White's conditions—his demand that AHS provide a TTY machine with a flashing light—constitutes a request for an accommodation of his disability. The record shows that AHS agreed to this condition.

After his demotion but before his termination, White filed a complaint with the Texas Commission on Human Rights ("TCHR"). He alleged AHS had discriminated against him on the bases of disability, race, and gender. The TCHR issued a right-to-sue letter on March 19, 2001, and White filed this lawsuit on June 18, 2001. The district court granted AHS's motion for summary judgment. This appeal followed.

II.

Because White addressed only his ADA claim in his appellate brief, we assume that he has abandoned his race- and gender-based discrimination claims.[2] We further assume that White's ADA claim consists of two parts, one related to his demotion and the other related to his subsequent termination. We construe the latter part to allege retaliatory discharge.

---

[2] See Sherrod v. American Airlines, Inc., 132 F.3d 1112, 1119 n.5 (5th Cir. 1998). ("[We] need not address whether the plaintiff raised a genuine issue of material fact regarding her claims for discrimination under the [Age Discrimination in Employment Act] and [Texas Commission on Human Rights Act]. [The plaintiff] waived review of these issues by not briefing them in the Argument of her brief.").

A.

We review the district court's grant of summary judgment de novo, applying the same standards followed below.[3]

B.

As an initial matter, we hold that the district court properly determined that White had exhausted his administrative remedies prior to filing his lawsuit. The record shows that he filed a complaint with the TCHR on September 18, 2000—after his demotion but before his termination. The TCHR issued a right-to-sue letter on March 19, 2001, and White filed his lawsuit on June 18, 2001.[4] To the extent that White contends he was terminated in retaliation for demanding a TTY machine as a condition of accepting the direct care position, his retaliatory discharge claim is a natural extension of the claims presented in his TCHR complaint, which alleged (among other things) the denial of reasonable accommodations including interpreters. Accordingly, both the demotion claim and the retaliatory discharge claim were properly before the district court.[5]

---

[3] EEOC v. R.J. Gallagher Co., 181 F.3d 645, 653-54 (5th Cir. 1999).

[4] See 42 U.S.C. § 2000e-5(f)(1) (requiring the complainant to file a lawsuit within 90 days of his receipt of the right-to-sue letter). AHS implicitly concedes that White's lawsuit was timely.

[5] See Ray v. Freeman, 626 F.2d 439, 442 (5th Cir. 1980) ("As long as allegations in the judicial complaint and proof are 'reasonably related' to charged in the administrative filing and 'no material differences' between them exist, the court will entertain them.").

White's first contention is that he was unlawfully demoted from his managerial position to a direct care position in violation of the ADA.  The ADA prohibits an employer from discriminating against a "qualified individual with a disability" on the basis of his disability.[6]  A plaintiff alleging disability discrimination in employment must make out a prima facie showing that (1) he has a disability, (2) he was qualified for the job, and (3) he was subject to an adverse employment action because of his disability.[7]

Based on our review of the record, we conclude that White has failed to make a prima facie case of discrimination in relation to his demotion.  In particular, White has shown no evidence that he was qualified for the job or that he was demoted from his managerial position because of his disability.  On the contrary, the uncontradicted evidence shows that he was demoted because he was unwilling to perform the on-call duties of his position.  Thus, the record supports only one conclusion: AHS demoted White because his second job, not his disability, rendered him unable to function as a manager.

White's second contention is that AHS terminated him because he demanded that it supply him with a TTY machine and interpreters. The ADA prohibits an employer from retaliating against an employee

---

[6] Ivy v. Jones, 192 F.3d 514, 516 (5th Cir. 1999) (citing 42 U.S.C. § 12112(a)).

[7] Id.

who asserts his rights under the ADA.[8]  To make out a prima facie case of retaliation, a plaintiff must show that (1) he was engaged in protected activity, (2) there was an adverse employment action, and (3) a causal link existed between the two.[9]  "In order to establish the causal link between the protected conduct and the illegal employment action as required by the prima facie case, the evidence must show that the employer's decision to terminate was based in part on knowledge of the employee's protected activity."[10]  If the plaintiff makes the prima facie showing, the burden shifts to the employer "to come forward with a legitimate, non-discriminatory reason for the adverse employment action."[11]  If the employer satisfies this requirement, the burden shifts back to the employee to "adduce sufficient evidence that would permit a reasonable trier of fact to find that the proffered reason is a pretext for retaliation."[12]

The evidence shows that White at various points during his tenure requested interpreters for meetings and that he demanded a TTY machine as a condition of accepting his demotion to the direct care position.  We assume for the present purpose that White can

---

[8] 42 U.S.C. § 12203(a).

[9] Sherrod, 132 F.3d at 1122 n.8.

[10] Id. at 1122.

[11] Id. (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973)).

[12] Id. (citing McDonnell Douglas, 411 U.S. at 804).

6

satisfy the first and second elements of the required prima facie showing. But we can find no evidence in the record, and White has identified none beyond his self-serving "gut feelings,"[13] supporting even an inference of a causal link between his accommodation requests and his termination. The only evidence linking the two is the uncontroverted fact that AHS acceded to White's demand that it install a TTY machine equipped with a flashing light. This evidence supports only an inference in support of AHS's position. Viewed in the light most favorable to White, we conclude that no evidence shows that AHS's decision to discharge White was based in any part on his accommodation requests.

Even if White had made the required prima facie showing, however, he could not meet his burden of responding to AHS's reason for his discharge. AHS explained that White's employment terminated when he failed to report to work on September 28, 2000, after being told that his failure to report would be considered a resignation. White has failed to adduce any evidence showing that his failure to report was not the real reason for his discharge. Indeed, the uncontradicted evidence shows that AHS agreed to provide White with a new TTY machine, as demanded, and had in other ways accommodated White's disability during his short tenure with

---

[13] See Douglass v. United Servs. Auto Ass'n., 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) ("It is more than well-settled that an employee's subjective belief that he suffered an adverse employment action as a result of discrimination, without more, is not enough to survive a summary judgment motion.").

the company.  Because there is no evidence of disability-related animus directed at White by AHS, and because there is unimpeached evidence to the contrary, no reasonable jury could find for White on the ultimate question of whether the adverse employment action would have occurred but for the protected activity.[14]

## III.

For the foregoing reasons, we AFFIRM the district court.

AFFIRMED.

---

[14] Sherrod, 132 F.3d at 1122.